IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ERIK MARTINEZ,                                      No. 2:14-cv-0114-CMK-P

        Plaintiff,

   vs.                                                    ORDER

BRYAN FLICKER,

        Defendant.

_____/

        Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is plaintiff's complaint (Doc. 1).

        The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1), (2). Moreover, the Federal Rules of Civil Procedure require that complaints contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This means that claims must be stated simply, concisely, and directly. See McHenry v. Renne, 84 F.3d 1172,

1

1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)). These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996). Because plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard. Additionally, it is impossible for the court to conduct the screening required by law when the allegations are vague and conclusory.

## I. PLAINTIFF'S ALLEGATIONS

Plaintiff's complaint is vague. He appears to be alleging that his First Amendment rights to free exercise of religion has been violated. However, he fails to allege sufficient facts for the court to evaluate that claim. Rather, the allegations in the complaint revolves around the prison officials' response, or lack thereof, to his inmate grievance regarding some denial of his religious freedom. He states that defendant Flicker denied his freedom of religion by failing to address his inmate grievance; and that defendants Hoovey, Honea, and Smith were notified, but failed to respond.

## II. DISCUSSION

To the extent plaintiff's claim centers on the lack of response to his inmate grievance, he cannot state a claim. Prisoners have no stand-alone due process rights related to the administrative grievance process. See Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (holding that there is no liberty interest entitling inmates to a specific grievance process). Because there is no right to any particular grievance process, it is impossible for due process to have been violated by ignoring or failing to properly process grievances. Numerous district courts in this circuit have reached the same conclusion. See Smith v. Calderon, 1999 WL 1051947 (N.D. Cal 1999) (finding that failure to properly process grievances did not violate any constitutional right); Cage v. Cambra, 1996 WL 506863 (N.D. Cal. 1996) (concluding that prison officials' failure to properly process

and address grievances does not support constitutional claim); James v. U.S. Marshal's Service, 1995 WL 29580 (N.D. Cal. 1995) (dismissing complaint without leave to amend because failure to process a grievance did not implicate a protected liberty interest); Murray v. Marshall, 1994 WL 245967 (N.D. Cal. 1994) (concluding that prisoner's claim that grievance process failed to function properly failed to state a claim under § 1983). Prisoners do, however, retain a First Amendment right to petition the government through the prison grievance process. See Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995). Therefore, interference with the grievance process may, in certain circumstances, implicate the First Amendment.

Here, other than the lack of response to his inmate grievance, it does not appear plaintiff is claiming interference. Rather, he appears to be concerned simply that his grievance was not granted. To that extent, plaintiff cannot state a claim.

In addition, many of the defendants named appear to be supervisors. Supervisory personnel are generally not liable under § 1983 for the actions of their employees. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no respondeat superior liability under § 1983). A supervisor is only liable for the constitutional violations of subordinates if the supervisor participated in or directed the violations. See id. The Supreme Court has rejected the notion that a supervisory defendant can be liable based on knowledge and acquiescence in a subordinate's unconstitutional conduct because government officials, regardless of their title, can only be held liable under § 1983 for his or her own conduct and not the conduct of others. See Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009). Supervisory personnel who implement a policy so deficient that the policy itself is a repudiation of constitutional rights and the moving force behind a constitutional violation may, however, be liable even where such personnel do not overtly participate in the offensive act. See Redman v. Cnty of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc).

When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. See Fayle v.

1  Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir.
2  1978).  Vague and conclusory allegations concerning the involvement of supervisory personnel
3  in civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th
4  Cir. 1982).  "[A] plaintiff must plead that each Government-official defendant, through the
5  official's own individual actions, has violated the constitution."  Iqbal, 129 S.Ct. at 1948.
6           To the extent plaintiff alleges defendants Hoovey, Honea, and Smith were all
7  notified about the lack of response to his grievance, and failed to act, such allegations do not state
8  a claim.  Only if the defendants were actually personally involved in the denial of a constitutional
9  right would plaintiff have a claim under § 1983.
10          To the extent plaintiff's claim is actually a denial of his religious rights, he fails to
11 provide any facts as to how his rights were denied, and by whom.  To state a claim under 42
12 U.S.C. § 1983, the plaintiff must allege an actual connection or link between the actions of the
13 named defendants and the alleged deprivations.  See Monell v. Dep't of Social Servs., 436 U.S.
14 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  "A person 'subjects' another to the
15 deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act,
16 participates in another's affirmative acts, or omits to perform an act which he is legally required
17 to do that causes the deprivation of which complaint is made."  Johnson v. Duffy, 588 F.2d 740,
18 743 (9th Cir. 1978).  Vague and conclusory allegations concerning the involvement of official
19 personnel in civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d
20 266, 268 (9th Cir. 1982).  Rather, the plaintiff must set forth specific facts as to each individual
21 defendant's causal role in the alleged constitutional deprivation.  See Leer v. Murphy, 844 F.2d
22 628, 634 (9th Cir. 1988).
23          The United States Supreme Court has held that prisoners retain their First
24 Amendment rights, including the right to free exercise of religion.  See O'Lone v. Estate of
25 Shabazz, 482 U.S. 342, 348 (1987); see also Pell v. Procunier, 417 U.S. 817, 822 (1974).  Thus,
26 for example, prisoners have a right to be provided with food sufficient to sustain them in good

health and which satisfies the dietary laws of their religion.  See McElyea v. Babbit, 833 F.2d 196, 198 (9th Cir. 1987).  In addition, prison officials are required to provide prisoners facilities where they can worship and access to clergy or spiritual leaders.  See Glittlemacker v. Prasse, 428 F.2d 1, 4 (3rd Cir. 1970).  Officials are not, however, required to supply clergy at state expense.  See id.  Inmates also must be given a "reasonable opportunity" to pursue their faith comparable to that afforded fellow prisoners who adhere to conventional religious precepts.  See Cruz v. Beto, 405 U.S. 319, 322 (1972).

However, the court has also recognized that limitations on a prisoner's free exercise rights arise from both the fact of incarceration and valid penological objectives.  See McElyea, 833 F.2d at 197.  For instance, under the First Amendment, the penological interest in a simplified food service has been held sufficient to allow a prison to provide orthodox Jewish inmates with a pork-free diet instead of a completely kosher diet.  See Ward v. Walsh, 1 F.3d 873, 877-79 (9th Cir. 1993).  Similarly, prison officials have a legitimate penological interest in getting inmates to their work and educational assignments.  See Mayweathers v. Newland, 258 F.3d 930, 38 (9th Cir. 2001) (analyzing Muslim inmates' First Amendment challenge to prison work rule).

Under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), prison officials are prohibited from imposing "substantial burdens" on religious exercise unless there exists a compelling governmental interest and the burden is the least restrictive means of satisfying that interest.  See Guru Nanak Sikh Soc. of Yuba City v. County of Sutter, 456 F.3d 978, 986 (9th Cir. 2006).  RLUIPA has been upheld by the Supreme Court, which held that RLUIPA's "institutionalized-persons provision was compatible with the Court's Establishment Clause jurisprudence and concluded that RLUIPA 'alleviates exceptional government-created burdens on private religious exercise.'"  Warsoldier v. Woodford, 418 F.3d 989, 994 (9th Cir. 2005) (quoting Cutter v. Wilkinson, 125 S.Ct. 2113, 2117 (2005)).  Congress achieved this goal by replacing the "reasonableness test" articulated in Turner with the "compelling government

1 | interest" test codified in RLUIPA at 42 U.S.C. § 2000cc-1(a).  See id.

2 |       Under both the First Amendment and RLUIPA, the prisoner bears the initial burden of establishing that the defendants substantially burdened the practice of his religion by preventing him from engaging in conduct mandated by his faith.  See Freeman v. Arpaio,125 F.3d 732, 736 (9th Cir. 1997) (analyzing claim under First Amendment); see also Warsoldier, 418 F.3d at 994-95 (analyzing claim under RLUIPA).  While RLUIPA does not define what constitutes a "substantial burden," pre-RLUIPA cases are instructive.  See id. at 995 (discussing cases defining "substantial burden" in the First Amendment context).  To show a substantial burden on the practice of religion, the prisoner must demonstrate that prison officials' conduct "burdens the adherent's practice of his or her religion by pressuring him or her to commit an act forbidden by the religion or by preventing him or her from engaging in conduct or having a religious experience which the faith mandates."  Graham v. Commissioner, 822 F.2d 844, 850-51 (9th Cir. 1987).  The burden must be more than a mere inconvenience.  See id. at 851.  In the context of claims based on religious diets, a plaintiff must prove that prison officials refused to provide a diet which satisfies his religious dietary laws or that the available prison menu prevented him from adhering to the religious dietary laws mandated by his faith.  See Bryant v. Gomez, 46 F.3d 948, 949 (9th Cir. 1995).

      Here, plaintiff does not specifically allege a violation of his religious rights. However, as that appears to be the underlying issue involved, plaintiff will be provided an opportunity to clarify his claim, and provide sufficient facts to support such a claim.

### III. CONCLUSION

Because it is possible that the deficiencies identified in this order may be cured by amending the complaint, plaintiff is entitled to leave to amend prior to dismissal of the entire action.  See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc).  Plaintiff is informed that, as a general rule, an amended complaint supersedes the original complaint.  See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992).  Thus, following dismissal with leave to

amend, all claims alleged in the original complaint which are not alleged in the amended complaint are waived.  See King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987).  Therefore, if plaintiff amends the complaint, the court cannot refer to the prior pleading in order to make plaintiff's amended complaint complete.  See Local Rule 220.  An amended complaint must be complete in itself without reference to any prior pleading.  See id.

If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of plaintiff's constitutional rights.  See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980).  The complaint must allege in specific terms how each named defendant is involved, and must set forth some affirmative link or connection between each defendant's actions and the claimed deprivation.  See May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Finally, plaintiff is warned that failure to file an amended complaint within the time provided in this order may be grounds for dismissal of this action.  See Ferdik, 963 F.2d at 1260-61; see also Local Rule 110.  Plaintiff is also warned that a complaint which fails to comply with Rule 8 may, in the court's discretion, be dismissed with prejudice pursuant to Rule 41(b).  See Nevijel v. North Coast Life Ins. Co., 651 F.2d 671, 673 (9th Cir. 1981).

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's complaint is dismissed with leave to amend; and

2. Plaintiff shall file an amended complaint within 30 days of the date of service of this order.

DATED: April 19, 2016

_____
CRAIG M. KELLISON
UNITED STATES MAGISTRATE JUDGE